IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GILBERTO HERNANDEZ,           §
                              §
        Plaintiff,            §
                              §
V.                            §           No. 3:17-cv-2049-BN
                              §
TRENDY COLLECTIONS, LLC, ET AL., §
                              §
        Defendants.           §

## MEMORANDUM OPINION AND ORDER

Defendants Trendy Collections, LLC ("Trendy"), Indertjit S. Dhani, Rajinder S. Singh, and Reetu Kaur (collectively, "Defendants") have filed a Motion for Summary Judgment. *See* Dkt. No. 43 ("Defendants' MSJ"). And Plaintiff Gilberto Hernandez has filed a Motion for Partial Summary Judgment. *See* Dkt. No. 46 ("Hernandez's MSJ").

Hernandez responded to Defendants' MSJ, *see* Dkt. No. 53, and objected to certain evidence that Defendants offer as "Timecards of Gilberto Hernandez" on the grounds that "[a] review of these time cards reflects that many of the cards are not what Defendants' purport them to be," Dkt. No. 54 at 6. Defendants then filed a reply. *See* Dkt. No. 58.

And Defendants responded to Hernandez's MSJ, *see* Dkt. No. 56, and filed Objections to Plaintiff's Affidavit, *see* Dkt. No. 57. Hernandez filed a reply in support of Hernandez's MSJ, *see* Dkt. No. 59, and a Response to Defendants' Objections to Plaintiff's Affidavit, *see* Dkt. No. 60, to which Defendants filed a Reply to Plaintiff's Response to Defendants' Objections to Plaintiff's Appendix, *see* Dkt. No. 62.

For the reasons explained below, the Court DENIES Defendants' Motion for Summary Judgment [Dkt. No. 43] and GRANTS in part and DENIES in part Plaintiff Gilberto Hernandez's Motion for Partial Summary Judgment [Dkt. No. 46].

## Background

Hernandez asserts that Defendants committed violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201-216 ("FLSA"), by failing to pay Hernandez overtime wages for work performed in excess of 40 hours weekly from the filing of his complaint back three years and because he "worked an average of 92 hours per week for which he was paid an average weekly salary of $450.00 resulting in an average effective straight time rate of $4.89 per hour which is less than the Federal minimum wage of $7.25 per hour." Dkt. No. 22 at 6.

Defendants move for summary judgment on Hernandez's claims, contending that "there is no genuine issue of material fact as to the existence of any violation of the' [FLSA] by Defendants," where "[n]ot only is Plaintiff unable to articulate any overtime compensation to which it asserts it is owed and how it came to such conclusion, but even taking Plaintiff's sworn statements as true, Plaintiff's own admissions and acknowledgments of facts defeat his claims under the FLSA." Dkt. No. 43 at 1-2. More specifically, Defendants contend that,

> [i]nasmuch as nothing supports Plaintiff's allegations as to his schedule during weeks he did not attend trade shows, but rather all evidence contradicts such assertions, Plaintiff cannot meet the threshold to survive summary judgment. Further, even taking as true Plaintiff's sworn statements as to the amount he claims to have been paid each week and his hours worked, it is without question that no overtime or minimum wage violations for weeks that he did not attend a show exists as a matter

of law. Accordingly, Defendants seek a take nothing judgment for each such week.

Moreover, as to the trade shows that Plaintiff did attend, there is no genuine issue of material fact as to whether any overtime or minimum wage violation occurred because the hours worked were limited by the access to the show facilities, which ensured that the hours for which Plaintiff worked, he was properly compensated. Furthermore, inasmuch as Plaintiff has failed to even articulate what shows he claims to have attended and the amount of overtime to which he is due, as well as the fact that the allegation that Plaintiff worked 92 hours in a single week lacks all plausibility and reasonableness, Plaintiff's claim cannot survive summary judgment.

Dkt. No. 44 at 1-2.

Hernandez, in turn, moves for partial summary judgment on his own FLSA claims and "asks the Court to find that: a. Plaintiff was an employee of the Defendants and not an independent contractor. b. Each of the Defendants was Plaintiff's employer as defined by the FLSA." Dkt. No. 46 at 1-2. Hernandez contends that, "[u]nder Federal Rule of Civil Procedure 56, Plaintiff is entitled to partial summary judgment as no genuine issue of material fact exists with regard to the elements necessary to establish that Plaintiff was an employee of the Defendants and not an independent contractor and that each of the Defendants was Plaintiff's employer as defined by the FLSA." *Id.* at 2.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v.*

*Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*

*v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof … that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194

(5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

Under the so-called "sham affidavit" rule, the United States Court of Appeals for the Fifth Circuit "does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (footnote omitted). But, "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *Id.* at 496.

Accordingly, a nonmoving party "may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation" – or, more generally, "a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000); *accord Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (noting that lower courts have held that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply

by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity"); *Hackett v. United Parcel Serv.*, ___ F. App'x ___, No. 17-20581, 2018 WL 2750297, at *3 (5th Cir. June 6, 2018) ("Accordingly, the district court may appropriately reject affidavits that contradict prior accounts – especially when no explanation for the conflict is offered."); *Keller v. Coastal Bend College*, 629 F. App'x 596, 601 n.4 (5th Cir. 2015) ("This court does not allow a party to manufacture an issue of fact in an affidavit that conflicts with prior deposition testimony without a satisfactory explanation.").

"This is because, if 'a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony,' 'the utility of summary judgment as a procedure for screening out sham issues of fact' would be greatly diminished." *Hacienda Records, L.P. v. Ramos*, 718 F. App'x 223, 235 (5th Cir. 2018) (quoting *Doe*, 220 F.3d at 386); *accord Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002) ("[U]nder the federal rules, when the sole evidence purporting to create a genuine issue of material fact and thus to preclude summary judgment is an affidavit that conflicts with deposition testimony, we have required an explanation of that conflict. This jurisprudential rule has evolved from cases in which opposing parties had provided the affidavit and the deposition; but it applies equally to situations such as this, when the affidavit contradicts prior sworn testimony by the affiant himself." (footnotes omitted)).

And the relative timing of the testimony does not control the rule's application

– "so long as inconsistent statements were made by [the witness as] the deponent and [the witness as] the affiant. the court may refuse to consider his declaration as competent evidence." *Id.* (internal quotation marks omitted).

In applying this rule, the Fifth Circuit has explained that "[a]n affidavit permissibly supplements earlier deposition testimony if it merely 'clarifie[s] or amplifie[s] the facts by giving greater detail or additional facts not previously provided in the deposition.'" *Hardesty v. Cochran*, 621 F. App'x 771, 778 (5th Cir. 2015) (footnote omitted; quoting *S.W.S.*, 72 F.3d at 496). The sham-affidavit rule does not preclude testimony by declaration or affidavit where the witness "'had no occasion' to reveal the details contained in the affidavit during his earlier deposition," and "a party may supplement his deposition testimony with additional, consistent facts and details via affidavit." *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 335 (5th Cir. 2008) (quoting *Clark v. Resistoflex, Inc.*, 854 F.2d 762, 766-67 (5th Cir. 1988)).

"By contrast, if the affiant 'was thoroughly questioned' about the issue at the deposition and answered the questions 'unequivocal[ly],' contradictory averments in the subsequent affidavit will not create a genuine dispute of material fact." *Hardesty*, 621 F. App'x at 778 (footnote omitted; quoting *Doe*, 220 F.3d at 386); *see also Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 233 n.9 (5th Cir. 1984) ("The nonmoving party cannot defeat a summary judgment motion by attempting to create a disputed material fact through the introduction of an affidavit that directly conflicts with his prior deposition testimony."). That is, if an affidavit "tells the same story differently" such that "the deposition and affidavit are substantially different," then "the affidavit does

not serve as a supplement to the deposition testimony," and the sham-affidavit rule "precludes [a party] from creating an issue regarding [a witness's] testimony by using an affidavit which contradicts [the witness's] sworn testimony." *S.W.S.*, 72 F.3d at 496; *accord Franco v. City of Corpus Christi*, 254 F.3d 1081 (table), No. 00-40497, 2001 WL 563927, at *3 (5th Cir. May 16, 2001) ("Based on a declaration that she made after her deposition testimony, Franco alternatively contends that she was constructively discharged as of November 2, 1996, the date ending her ninety-day period under the City's limited-duty policy. Because this evidence inexplicably contradicts her previously sworn deposition testimony and her amended complaint, in which she attested that she resigned from her employment, Franco may not rely on it to defeat summary judgment.").

## Analysis

### I.  Defendants' Objections to Hernandez's Summary Judgment Evidence

In response to Defendants' MSJ, Hernandez submitted his own Affidavit. *See* Dkt. No. 55 at 3-76 of 119. Defendants object that the Affidavit of Gilberto Hernandez is a sham affidavit that the Court should strike. *See* Dkt. No. 57. According to Defendants, "[v]ital facts stated in the Plaintiff's Affidavit are wholly inconsistent with Plaintiff's testimony during his deposition and verified discovery making Plaintiff's Affidavit irrelevant and of no import as the Court determines whether Defendants have carried their burden," and "[t]he glaring inconsistencies and contradictions require that Plaintiff's Affidavit be stricken as a sham affidavit." *Id.* at 2-3.

Defendants offer "[e]xamples of some of Plaintiff's contradictions, made without

explanation," in support of their assertion that "Plaintiff's Affidavit should be stricken in is entirety as it is replete with inconsistencies between prior discovery responses and deposition testimony." *Id.* The Court will examine those examples to assess whether to disregard those specific portions of Hernandez's affidavit – but the Court is not required to, and will not, otherwise make Defendants' objections for them by comparing Hernandez's affidavit testimony to his deposition. *Cf.* Dkt. No. 15 at 6 ("The moving party must bracket in the margin of each document in the appendix the portions of the document on which the movant relies, and, when citing record materials in its brief, the moving party must support each assertion by citing each relevant page of its appendix."); *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 555 n.7 (5th Cir. 2016) ("It is not our function to scour the record in search of evidence to defeat a motion for summary judgment; we rely on the nonmoving party to identify with reasonable particularity the evidence upon which he relies." (internal quotation marks omitted)).

Defendants further contend that,

> [i]n addition to the Affidavit being conclusory, and replete with speculation, surmise and hearsay, it includes and relies upon evidence that was not properly produced during discovery. Defendants object to the reliance or use of any of Plaintiff's cell phone related documents and paragraphs 6-9 of the Plaintiff's Affidavit, inasmuch as Plaintiff not only refused to produce the same during discovery, but even admitted to destroying the same after being on notice that it was requested during discovery while under oath. In light of such conduct, it is unfathomable that such testimony and documentation, which cannot and could not be authenticated and as the underlying evidence was not produced could be used to defeat Defendants' entitlement to summary judgment.
>
> Neither Plaintiff nor Defendants can authenticate that the images were taken from his phone, that the date, time and location information

is accurate, especially in light of Plaintiff's testimony that he did not know when or where the pictures were taken. The reliance on the geo-tags is hearsay and cannot be from the same phone, as Plaintiff admitted that he no longer has such phone and has failed to explain how after the phone was destroyed, such images and geo-tag information could suddenly be obtained.

Defendants further object to the images and paragraphs 7-9 under the best evidence rule. Furthermore, inasmuch as the images are unclear, Defendants cannot even read the content thereof and object on such grounds and to the extent these items have not been produced in response to discovery.

*Id.* at 8-9 (footnotes omitted). And "Defendants object to Plaintiff's Affidavit at paras. 5-9" based on lack of personal knowledge and as conclusory, speculative, and improbable assertions. *Id.* at 9-10. Finally, Defendants object to the bank statements attached to the affidavit as hearsay and irrelevant as well as based on failure to lay a predicate or foundation. *See id.* at 10-11.

Hernandez responds that his affidavit does not run afoul of the sham-affidavit rule where "[m]ere conflict between an affidavit and prior testimony is not sufficient to invoke the sham affidavit doctrine and parties may explain or supplement deposition testimony by way of later affidavit," and, according to Hernandez, "[e]ach of Defendants' objections to Plaintiff's Affidavit and the photographs attached thereto should be overruled and the Court should consider the evidence submitted in deciding Defendants' Motion for Summary Judgment." Dkt. No. 61 at 2-10. And Hernandez responds that the bank statements produced by Defendants are relevant and are admissible where "[d]ocuments produced by a party in response to a discovery request during litigation are self-authenticating and constitute admissions of a party opponent under Rule 801(d)(2)(A) of the Federal Rules of Evidence." *Id.* at 3, 10-11.

A.  Paragraph 5 of the Affidavit of Gilberto Hernandez

Defendants object to Hernandez's stating "I also worked some Sundays from approximately 9:00am to 2:00p.m. at the warehouse in Dallas to prepare for travelling to trade shows later in the week." Dkt. No. 55 at 3 of 119. Hernandez has not provided an adequate explanation for this new information that he did not provide in answering Interrogatory No. 9 ("Please describe your work schedule while working for Trendy Collections, LLC.") and in answering deposition questions. As Defendants point out, Interrogatory No. 9 poses a broad question, and Hernandez answered with a detailed response. And Hernandez was likewise asked questions at his deposition to which this new information would be responsive and within his ability to provide from his own personal knowledge and experience. Neither can the Court credit Hernandez's assertion that his deposition was never completed, in the face of the record Defendants provide in reply in support of their objections that Hernandez's counsel agreed not to go forward with the continued deposition. This testimony by affidavit contradicts discovery responses and deposition testimony without explanation, and the Court will disregard it in deciding Defendants' MSJ.

B.  Paragraphs 6 through 9 of the Affidavit of Gilberto Hernandez

Defendants object to Hernandez's naming several cities in his affidavit as locations of trade shows that he attended when, at his deposition, "he did not know where any of the trade shows were, except that the first one he attended was in Memphis." Dkt. No. 57. Defendants contend that these locations are "largely identical to the names of trade shows that are listed in the Time Logs and bank statements of

Defendant Trendy"; that "[t]his is not information based upon Plaintiff's personal knowledge, but the use of discovery to attempt to manufacture a claim"; and that "Plaintiff cannot supplement the record in this manner without having some explanation as to how he went from not knowing this information to knowing it sufficiently to use as the basis of a sworn document to defeat summary judgment." *Id.* (footnote omitted). But nothing in the sham-affidavit rule prevents that. Defendants do not claim that, during his deposition, Hernandez denied going to any trade shows other than in Memphis, and Hernandez was not under some obligation – such as Federal Rule of Civil Procedure 30(b)(6) might impose – to have reviewed all possibly relevant records before his deposition. If he did not remember locations during his deposition but can now attest to them with the benefit of records obtained through discovery, that does not run afoul of the sham-affidavit rule. The Court overrules this objection to Paragraph 6.

But Defendants' objections to Hernandez's reliance on the attached photographs and geo-tags are well-taken for these purposes. Hernandez appears to have been unable to authenticate the photographs – assuming they were produced as required during discovery – during his deposition and now attests to their authenticity and accuracy, in the face of hearsay issues, in his affidavit. The Court will disregard the photographs and Paragraph 9 in deciding Defendants' MSJ. But the Court is not persuaded that Hernandez's testimony in Paragraphs 7or 8 is precluded by the sham-affidavit rule or otherwise based on anything Defendants have presented and will overrule the objections as to the testimony in those paragraphs.

Finally, Defendants' objection that, in Paragraph 7, Hernandez is now disavowing attending one trade show when he testified at his deposition that he went to every show that Trendy Collections, LLC attended while he worked for Trendy is a somewhat unusual invocation of the sham-affidavit rule. But, because it contradicts, without explanation, Hernandez's deposition testimony, the Court will disregard the last two sentences of Paragraph 7 in favor of his broader deposition testimony in deciding Defendants' MSJ.

     C.    <u>Testimony on hours compared with time cards and time logs</u>

Defendants' objections to Hernandez's affidavit testimony amounts to a claim that an affidavit that contradicts Defendants' documentary evidence of Hernandez's hours worked must be excluded as a sham affidavit. The Court cannot agree, and nothing in Hernandez's deposition testimony to which Defendants point supports their objections to the contrary. The Court overrules those objections.

     D.    <u>Defendants' bank statements</u>

The Court will address Defendants' objections to their own bank statements as necessary below to the extent that the Court must consider these documents as possible summary judgment evidence in Hernandez's favor.

II.    <u>Hernandez's Objections to Defendants' Summary Judgment Evidence</u>

Hernandez, in turn, objects to some of Defendants' summary judgment evidence and briefing, specifically

> object[ing] to the documents Defendants refer to "Timecards of Gilberto Hernandez." A review of these time cards reflects that many of the cards are not what Defendants' purport them to be; for example, the time cards

on pages 106, 109, 110, 111, and 112 are labelled as belonging to an individual named Sergio, the time cards on pages 114 and 115 are labelled as belonging to an individual named Arturo Gomez, the time card on page 107 appears to be labelled as belonging to an individual named Velia Campos, the time card on page 108 bears no name, and only the cards on pages 105, 113, 116, and 117 bear Plaintiff's name. *See* (DE 45 at pp. 104 – 117). Furthermore, Plaintiff's deposition testimony regarding time cards appears to only reflect references to time cards with Bates numbers 257 and 261. (DE 45 at p. 16). Those two cards correspond to the cards on pages 113 and 117 of Defendants' Appendix in Support of Motion for Summary Judgment. *Id.* at pp. 113 and 117. For these reasons, Plaintiff objects to the time cards included at pages 106, 107, 108, 109, 110, 111, 112, 114, and 115 of Defendants' Appendix for lack of authentication and because Defendants appear to have misrepresented what those documents purport to be.

Plaintiff also objects to Defendants' Motion for Summary Judgment, including the Brief and Appendix in Support, as those documents are not in compliance with Local Rules 7.1(i), 7.2(d)-(e), 56.5(b)-(c), and 56.6(b). See LOCAL RULES 7.1(i), 7.2(d)-(e), 56.5(b)-(c), and 56.6(b). Failure to comply with these local rules has created difficulty in reviewing and responding to Defendants' Motion for Summary Judgment, particularly in regard to citations to the Defendants' Appendix.

Dkt No. 54 at 6.

Taking the second set of objections first, Defendants' brief and appendix do not fully comply with the Local Civil Rules or the more specific requirements imposed in the Court's Initial Scheduling Order. *See* Dkt. No. 15 at 5-6. But the Court will not disregard or deny Defendants' MSJ on that account.

As for Hernandez's objections to the time cards' authenticity, the Court views these objections as going more to the weight, if any, to be afforded each document in support of Defendants' MSJ and not their admissibility – Hernandez does not deny that they may be time cards even if not time cards all showing his (as opposed to another person's) hours worked – and will take account of these objections to the extent

that the Court must consider these documents as possible summary judgment evidence in deciding Defendants' MSJ.

III.    Defendants' MSJ on Hernandez's FLSA Claims

As another judge in this district recently summarized,

> Defendants are moving for summary judgment on claims for which plaintiffs will have the burden of proof at trial. Because plaintiffs will have the burden of proof, defendants' burden at the summary judgment stage is to point the court to the absence of evidence of any essential element of plaintiffs' claim. Once they do so, plaintiffs must go beyond their pleadings and designate specific facts demonstrating that there is a genuine issue for trial. An issue is genuine if the evidence is such that a reasonable jury could return a verdict in plaintiffs' favor. Plaintiffs' failure to produce proof as to any essential element of the claim renders all other facts immaterial. Summary judgment is mandatory where plaintiffs fail to meet this burden.

*Lopez v. Reliable Clean-Up & Support Servs., LLC*, No. 3:16-cv-2595-D, 2018 WL 3609271, at *6 (N.D. Tex. July 28, 2018) (citations and internal quotation marks omitted). That is, "a material issue of fact is not raised if, looking at the summary judgment evidence, a directed verdict under Federal Rule of Civil Procedure 50(a) would be appropriate." *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 365 (5th Cir. 1988). "Put another way, 'summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.'" *Terrell v. Hancock Bank*, 7 F. Supp. 2d 812, 814 (S.D. Miss. 1998) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991)).

In the context of Hernandez's claims here,

> [t]he FLSA requires that employers pay employees who work more than 40 hours per week 1½ times their regular pay rate for each hour of overtime. 29 U.S.C. § 207(a)(1). An employee bringing an action for

unpaid overtime compensation must first demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due.

*Lopez*, 2018 WL 3609271, at *6 (citations and internal quotation marks omitted). "'An employee bringing an action pursuant to the FLSA, based on unpaid overtime compensation, must first demonstrate that [he] has performed work for which [he] alleges [he] was not compensated.'" *Kirk v. Invesco, Ltd.*, 700 F. App'x 334, 336 (5th Cir. 2017) (per curiam) (quoting *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005)). Similarly, to establish a claim for nonpayment of minimum wages under 29 U.S.C. § 206, an employee must show that he was not compensated for all hours worked during each work week at a rate equal to or greater than the then applicable minimum wage. *See Albanil v. Coast 2 Coast, Inc.*, 444 F. App'x 788, 800-11 (5th Cir. 2011); *Cruz-Cruz v. Calymayor-Barrios*, No. 5:15-CV-00342-XR, 2016 WL 1337343, at *2-*3 (W.D. Tex. Apr. 5, 2016); *Brown v. Phenix Transp. West, Inc.*, No. 3:13-cv-781-WHB-RHW, 2015 WL 11120647, at *2 (S.D. Miss. Feb. 3, 2015); *Hill v. Cobb*, No. 2:13-cv-045-SA-SAA, 2014 WL 3810226, at *11 (N.D. Miss. Aug. 1, 2014).

"When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds as explained in Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 516-17 (2014). "But where the employer's records are inaccurate or inadequate and the

employee cannot offer convincing substitutes a more difficult problem arises. The

solution, however, is not to penalize the employee by denying him any recovery on the

ground that he is unable to prove the precise extent of uncompensated work." *Id.*

> Where accurate time records are unavailable an employee has met this
> burden of proof if he proves that [he] has in fact performed work for
> which [he] was improperly compensated and if [he] produces sufficient
> evidence to show the amount and extent of that work as a matter of just
> and reasonable inference. The burden [then] shifts to the employer to
> come forward with evidence of the precise amount of work performed or
> with evidence to negative the reasonableness of the inference to be drawn
> from the employee's evidence.
>
> To raise a "just and reasonable inference" as to the amount and
> extent of his work, an employee need not prove "the precise extent of
> uncompensated work." *Anderson*, 328 U.S. at 687. Evidence of hours
> worked need not be "perfectly accurate" as long as it provides "a sufficient
> basis to calculate the number of hours worked by each employee." Under
> this standard, the court may draw inferences from oral testimony, sworn
> declarations, and any other relevant documentary evidence that the
> plaintiff produces. The evidence may be anecdotal and imprecise, but
> mere assertions will not suffice. *Harvill*, 433 F.3d at 441.
>
> The FLSA makes clear that employers, not employees, bear the
> ultimate responsibility for ensuring that employee time sheets are an
> accurate record of all hours worked by employees. 29 U.S.C. § 211(c);
> *Anderson*, 328 U.S. at 687....

*Lopez*, 2018 WL 3609271, at *13-*14 (citations and internal quotation marks omitted).

A.    Hernandez's hours worked in weeks without a trade show

Defendants contend that there is no genuine dispute of material fact that there

are no FLSA violations for weeks without trade shows, where Hernandez

> has admitted that he used time cards to keep track of his time at
> Defendant Trendy Collections, LLC's place of business. This testimony is
> corroborated by another worker of Defendant Trendy Collections, LLC,
> the Time Cards of Plaintiff that were still available and the records of
> Defendant Trendy Collections, LLC, such as the Time Cards and Time
> Log.
>
> In addition, Defendant Trendy Collections, LLC had an individual

dedicated to keeping track of time, that workers were required to clock in and out and would be reminded if they forgot and that the time cards were transferred into the Time Log kept by Reetu Kaur for purposes of calculating payments to the workers at the end of the week.

Each of the Time Cards and the Time Log show that Defendant never clocked in prior to 9:30am nor worked on weekends, unless there was a trade show. Furthermore, Plaintiff has confirmed that the subject Time Cards are his.

The Time Log in which Reetu Kaur transferred the Time Card information supports that Plaintiff never started work prior to 9:30am or on weekends for weeks there were no trade show. In fact, both the corporate representative and a worker have testified that the business opens at 9:30am and that is when the workers arrive. Specifically, Diana Guerrero has further confirmed that everyone's hours are 9:30am to 6pm on Monday through Friday, unless there is a trade show. The testimony is clear that no one can access the building until the individual named Defendants arrived and that was usually at 9:30am. There is simply nothing supporting Plaintiff's assertion that his hours are what he is now saying they are.

Defendant Trendy Collections, LLC's hours are 9:30am to 6:00pm Monday through Friday, as confirmed by a worker, an employee, Defendant Trendy Collections, LLC's corporate representative and the Time Cards and Time Log. In addition, the Time Log and the Time Cards of Defendant and other workers none show any work performed on Saturdays. The evidence further shows that if the individually named Defendants were not present at the Dallas location, nobody could enter and entrance was required for work to be performed. Other than Plaintiff now claiming that he worked Saturdays to generate a claim, there is nothing that supports this allegation or Plaintiff's implausible allegation that he worked 92 hours per week. Thus, Plaintiff cannot meet its burden to survive summary judgment as a matter of law.

Dkt. No. 44 at 11-12.

Defendant further argue that Hernandez's "own representations, even if they were true, defeat any FLSA claim for weeks there were no trade shows," where

[p]ut simply, even if Plaintiff actually did work from 9am to 6pm from Monday through Saturday, with a thirty minute lunch, as he asserted in his deposition and contrary to all other evidence in this case, he would have worked a total of 8.5 hours per day over this six-day work week, for a total of 51 hours per week. Therefore, based upon Plaintiff's own

testimony, minimum wage would require that he be paid $290.00 for the first forty hours and overtime at $10.88 per hour for the remaining 11 hours of overtime for Defendant Trendy Collections, LLC to be compliant with the FLSA. This totals $409.63. Plaintiff testified that he was paid $450 to $500 per week for weeks that he did not attend a trade show. He also alleges that he was paid $450.00 per week in the [First Amended Complaint]. Thus, even if Plaintiff is given the benefit of these assertions being taken as true, no minimum wage or overtime violation occurred under the FLSA for weeks in which there was no trade show attended by Plaintiff and Defendants are entitled to summary judgment as to Plaintiff's claims for each week in which Plaintiff did not attend a trade show for Defendant Trendy Collections, LLC.

*Id.* at 12-13.

The Court has already overruled Defendants' objections to Hernandez's affidavit testimony concerning the hours that he worked, and, contrary to Defendants' assertions on summary judgment, Hernandez's live complaint alleges that he worked not 92 hours every week but "an average of 92 hours per week for which he was paid an average weekly salary of $450.00 resulting in an average effective straight time rate of $4.89 per hour, and was not paid the extra half-time rate for all hours worked above 40 hours in a week as required by the Fair Labor Standards Act." Dkt. No. 22 at 4.

Further, a careful review of Hernandez's deposition testimony reveals that Hernandez did not authenticate all of the time cards on which Defendants rely and, during his deposition, testified that he worked on weekends even when he was not attending a trade show. And the record is clear that Hernandez's "position is and always has been that Defendants' time records do not accurately reflect all of his hours worked." Dkt. No. 61 at 7. On this record, the Court cannot determine that Defendants' proffered time records count as "proper and accurate records" that would require more

of Hernandez than to produce sufficient evidence to show the amount and extent of his hours worked as a matter of just and reasonable inference, and Hernandez's testimony, which goes beyond mere assertions of certain number of hours per week, offers sufficient evidence to enable a jury to find the amount and extent of that work as a matter of just and reasonable inference.

Defendants dispute the truth of Hernandez's factual assertions and offer evidence to the contrary, but that is the stuff of disputes of material fact for a jury to resolve at trial. Further, Hernandez has presented Defendant Kaur's deposition testimony that it was her regular practice to throw away employee time cards after she reviewed them.

And the Court agrees with Hernandez's assessment that Defendants' attempt to recalculate the compensation due to Plaintiff at the very least fails to support summary judgment where "there has been no evidence presented to support a finding that Plaintiff was to be paid only the minimum wage." Dkt. No. 54 at 16. In fact, Hernandez's has submitted deposition testimony by Defendant Singh as the corporate representative of Defendant Trendy that Defendants paid Hernandez $12.50 per hour. *See* Dkt. No. 48 at 10 of 134; *see also* Dkt. No. 56 at 5 ("Defendant Trendy's deposition states that it paid Plaintiff $12.50 per hour, whereas other testimony has the payment at $100 per day, and Plaintiff asserts it was paid $450.00 per week. Accordingly, due to the differences in the testimony, Defendant admits in part and denies in part the allegations in Paragraph 14." (footnote omitted)).

For all of these reasons, the Court concludes that Defendants are not entitled

to a judgment as a matter of law in their favor that as to Hernandez's claims of FLSA violations for weeks without trade shows.

B.   Hernandez's hours worked in weeks in which he attended a trade show

Defendants contend that Hernandez's "claim that he worked 92 hours of a 168 work week, when he only worked 16 or 17 hours in the first 48 hours is not only false, but unreasonable and implausible" and that Hernandez "has failed to even identify the overtime compensation for which he is due," where he

asserts that the first trade show he attended was in Memphis, Tennessee, which is the first show Defendant Trendy Collections, LLC denotes in records in April, 2016, as Plaintiff having attended.

As part of its regular course of business, Defendant Trendy Collections, LLC assigned the responsibility of keeping track of time by recording the information in the Time Log to Reetu Kaur. Specifically, Defendant Reetu Kaur would record the information from the Time Cards into the Time Log, as well as supplement it with information provided by the other individual Defendants who kept track of when a worker arrived in the event a worker did not clock in on a particular day, as those individual Defendants would monitor the arrival times of the workers.

Plaintiff does not refute the accuracy of the Time Log or otherwise challenged its authenticity. In fact, Plaintiff simply admits it has no knowledge about the Time Log, but did know that there were timekeeping measures used by Trendy Collections, LLC and engage in punching his Time Card. Accordingly, Defendant Trendy Collections, LLC is able to identify the shows that a worker attended based upon the Time Log.

For each of the shows, it is undisputed that the time worked was limited to that of the trade show facility and Defendant Trendy Collections, LLC did not work beyond that period, which varied by show. Generally, such time commenced around 9am or 10am in the morning and could end any time from 3pm to 6pm in the evening.

For all practical purposes, there is no humanly possible way that Plaintiff could work 92 hours in a week even when a trade show occurred, as the Monday of such week he would work 8 hours or a most 8.5 hours. On that Tuesday, he would work from 9am to noon, then travel for 6 to 7 hours (which is uncompensated time as no work from his was required). Essentially, for Plaintiff's allegation to be plausible, Plaintiff would have

to work no less than 82 hours from Wednesday to Sunday to achieve those hours.

Dkt. No. 44 at 13-16.

Here, Defendants essentially argue that 92 hours in a week is implausible on its face and that the Court should credit their evidence of the limitations on what hours Hernandez could have worked in the face of Hernandez's contrary testimony. Again, Hernandez has not conceded the accuracy or completeness of Defendants' time records to the extent that the briefing would have it. As Hernandez points out, he has "provided affidavit testimony regarding his regular schedule during weeks that he attended trade shows with the Defendants; this testimony contradicts the information contained in Defendants' Time Log document and Plaintiff's testimony reflects far more hours worked during weeks that he attended a trade show than are reflected in the Time Log." Dkt. No. 54 at 17. And Hernandez has presented Defendant Kaur's deposition testimony that Defendants did not use time cards to track hours worked by employees at trade shows but rather she relied on statements from Defendants Dhani and Singh to record those hours if the hours were recorded at all.

Under these circumstances, certainly no less than as to Defendants' time records for non-trade-show weeks, the Court cannot determine that Defendants' proffered time records count as "proper and accurate records" that would require Hernandez to show more than he has to survive summary judgment. And the Court determines that Hernandez's testimony, which – even without the photographs and bank records – goes

beyond mere assertions of certain number of hours per week, offers sufficient evidence to enable a jury to find the amount and extent of that work as a matter of just and reasonable inference at this stage. And that Defendants contend that it is implausible for Hernandez, based on Defendants' calculations, to work 82 hours in 5 days does not entitle Defendants to judgment as a matter of law.

For all of these reasons, the Court concludes that Defendants are not entitled to a judgment as a matter of law in their favor that as to Hernandez's claims of FLSA violations for weeks in which Defendants attended trade shows.

## IV.    Hernandez's MSJ on the "Employee" Issue

The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employ" as "to suffer or permit to work," *id.* § 203(g). The United States Supreme Court has observed that this definition is broad. *See Rutherford Food Corp. v. McComb,* 331 U.S. 722, 728 (1947).

The determination of whether a worker qualifies as an employee for purposes of the FLSA requires consideration of whether, as a matter of economic reality, the worker was economically dependent upon the business to which he rendered his services or was instead in business for himself – that is, whether Hernandez, as a matter of economic reality, was dependent for his continued employment on his relationship with his alleged employers. *See Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008); *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1054 (5th Cir. 1987).

To make this determination, the United States Court of Appeals for the Fifth

Circuit has long mandated the consideration of the following factors, based on all the evidence in the case: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss was determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *See Hopkins*, 545 F.3d at 343; *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 666 (5th Cir. 1983). A determination of whether Plaintiff should be classified under employee or independent contractor status, while considering these factors, requires a consideration of all the evidence presented regarding the circumstances surrounding the work relationship that Plaintiff had with Trendy Collections, LLC. *See id.*

No single factor determines the outcome, *see Hopkins*, 545 F.3d at 343, and the Court must consider the economic relationship as a whole, *see Thibault v. Bellsouth Telecommunications, Inc.,* 612 F.3d 843, 846 (5th Cir. 2010). Each of the factors is a tool to be used to gauge the economic dependence of the alleged employee, and each factor must be applied with this ultimate concept in mind: whether, as a matter of economic reality, Hernandez was economically dependent upon his alleged employers or was instead in business for himself. *See id.* at 845-46.

"These factors are not exhaustive, nor can they be applied mechanically to arrive at a final determination of employee status. Rather, they must always be aimed at an assessment of the 'economic dependence' of the putative employees, the touchstone for this totality of the circumstances test." *Brock*, 814 F.2d at 1043. The subjective beliefs

of the alleged employee or employer are irrelevant to a worker's status, and "facile labels and subjective factors are only relevant to the extent that they mirror 'economic reality.'" *Id.* at 1044, 1049.

And the Fifth Circuit has held that "[t]he ultimate finding as to employee status is not simply a factual inference drawn from historical facts, but more accurately is a legal conclusion based on factual inferences drawn from historical facts." *Id.* at 1045. "But application of the five-factor test of economic dependence will require a factual inquiry and a full record of the applicable facts." *Lopez*, 2018 WL 3609271, at *8 (internal quotation marks omitted). And "[i]t is common in FLSA cases that 'there are facts pointing in both directions' regarding the issue of employee status." *Id.* at 11 (quoting *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 305 (5th Cir. 1998) (quoting *Carrell v. Sunland Constr., Inc.*, 998 F.2d 330, 334 (5th Cir. 1993))).

Hernandez contends that he is entitled to summary judgment on this issue because "each of the five factors of the economic realities test supports a finding that Plaintiff was in fact an employee of Defendant Trendy and not an independent contractor" and, "[t]herefore, there is no genuine issue of material fact that Defendant Trendy was Plaintiff's employer and that Plaintiff was Defendant Trendy's employee." Dkt. No. 47 at 12. Again, as another judge recently explained,

> [b]ecause [Hernandez] will have the burden of proof at trial on [his] FLSA [] claim, to be entitled to summary judgment [he] must establish 'beyond peradventure all of the essential elements of the claim. This means that [Hernandez] must demonstrate that there are no genuine and material fact disputes and that [he is] entitled to summary judgment as a matter of law. The court has noted that the 'beyond peradventure' standard is heavy.

*Lopez*, 2018 WL 3609271, at *6 (citations and internal quotation marks omitted). But "summary judgment is appropriate where the evidence would require a directed verdict," *Freeman v. Thunder Bay Transp. Co., Inc.*, 735 F. Supp. 680, 682 (M.D. La. 1990).

Defendants' object to Hernandez's submission of Defendant Trendy Collections, LLC's 2015 and 2016 federal tax returns as summary judgment evidence on hearsay grounds. *See* Dkt. No. 56 at 2. Hernandez does not address this objection in his reply [Dkt. No. 59], and the Court will not consider those documents in resolving Hernandez's MSJ.

But the undisputed summary judgment evidence shows that:

- "Defendant Dhani is the owner and president of Defendant Trendy," Dkt. No. 47 at 7; *accord* Dkt. No. 56 at 4;

- "Defendant Dhani had the authority to hire, fire and supervise workers," Dkt. No. 56 at 4; *accord* Dkt. No. 47 at 7;

- "Defendant Singh had supervising authority and conferred with Defendant Dhani on hiring decisions," Dkt. No. 56 at 4; *accord* Dkt. No. 47 at 7;

- "Defendant Dhani had authority to terminate employees on behalf of Defendant Trendy during the period that Plaintiff worked for Defendants," Dkt. No. 47 at 7; *accord* Dkt. No. 56 at 4;

- "Defendants set Plaintiff's pay," Dkt. No. 47 at 7; *accord* Dkt. No. 56 at 5;

- "Defendant Singh was personally responsible for setting the Plaintiff's schedule" at least on days when Trendy needed Hernandez to work and he was available,

Dkt. No. 47 at 7; *accord* Dkt. No. 56 at 3-5;

- "Defendant Kaur was responsible for compiling the records that Defendants contend tracked Plaintiff's hours worked and Defendants Dhani and Singh were also involved in the timekeeping and payment process," Dkt. No. 47 at 7-8; *accord* Dkt. No. 56 at 5;

- "Defendant Dhani states that he is responsible for setting policies of Defendant Trendy," Dkt. No. 56 at 5; *accord* Dkt. No. 47 at 8;

- "Defendants Dhani and Kaur both have signature authority to write checks on behalf of Defendant Trendy," Dkt. No. 47 at 8; *accord* Dkt. No. 56 at 5;

- Defendants Dhani, Singh, and Kaur paid individuals who performed labor on behalf of Defendant Trendy, *see* Dkt. No. 56 at 5-6; *accord* Dkt. No. 47 at 8; and

- Defendants Dhani and Singh each traveled to trade shows with workers including Hernandez, as did Defendant Kaur one time, and Defendant Trendy paid for room and board and meals, *see* Dkt. No. 56 at 6; *accord* Dkt. No. 47 at 8.

A.      Degree of control

The Fifth Circuit has made clear that "'[c]ontrol is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity.'" *Hopkins,* 545 F.3d at 343 (quoting *Brock,* 814 F.2d at 1049). So an individual who is assigned by a supervisor to specific tasks during specific days and hours and is supervised as to how the tasks should be performed is generally determined to be an employee rather than an independent contractor. *See*

*Thibault*, 612 F.3d at 846-47.

Here, the summary judgment evidence cited by Defendants raises a genuine dispute of material fact as to the nature and degree of the control that Defendants exerted over when Hernandez would work.

B.     Relative investments

When determining whether an individual is an employee or an independent contractor, courts usually consider whether that individual is responsible for his own tools and materials. *See, e.g.*, *Thibault*, 612 F.3d at 847-48; *Carrell*, 998 F.2d at 333. Here, there is evidence that Trendy provided the truck that Hernandez drove but that he provided the cell phone that he used as part of his job. On this record, without considering Trendy's tax returns (as noted above), the Court cannot conclude, as Hernandez would have it, no reasonable jury could determine that this factor weighs in favor of contractor status.

C.     Opportunity for profit or loss

The opportunity to profit beyond the payment of an hourly wage is an indicia of independent contractor status. That is, the ability to increase profits by controlling costs suggests that an individual is an independent contractor and not an employee. *See Carrell,* 998 F.2d at 334.

Here, as Hernandez notes, his "only ability to control how much he made was by working more for the Defendants, which Defendants acknowledge." Dkt. No. 59 at 6. Even taking all evidence in the light most favorable to Defendants, no reasonable jury could determine that this factor weighs in favor of contractor status.

D.  Skill and initiative

The Fifth Circuit looks to both skills and ability to exercise initiative to determine whether workers are employees under the FLSA. An individual with specialized skill is more likely to be categorized as an independent contractor. On the other hand, the work associated with semi- or unskilled laborers is not typically provided by a skilled independent contractor. *See Thibault*, 612 F.3d at 847; *Carrell*, 998 F.2d at 333.

Contrary to Hernandez's assertion, there is evidence that he may have operated a forklift when working at Trendy. *See* Dkt. No. 45 at 134 of 136. There is a genuine dispute as to facts relevant to this factor.

E.  Permanency of the relationship and relative duration

The Fifth Circuit has generally found that an individual who does not work exclusively for an employer is an independent contractor. *See Thibault*, 612 F.3d at 846. Individuals who have a "temporary, project-by-project, on-again-off-again relationship with their purported employers" are usually categorized as independent contractors, while those who "worked full-time exclusively for the defendants" are considered employees. *Cromwell v. Driftwood Elec. Contractors, Inc.,* 348 F. App'x 57, 59-60 (5th Cir. 2009).

Here, the summary judgment evidence shows a genuine dispute of material fact as to whether Defendants correctly assert that Hernandez "had an opportunity to work for Defendant Trendy and could also exercise the option to work other places or not work at all, which he did." Dkt. No. 56 at 10.

For the reasons explained above, the Court concludes that the summary judgment evidence here at least presents a genuine dispute of material fact as to whether an employment, rather than independent contractor, relationship existed between Defendant Trendy Collections, LLC and Hernandez and therefore precludes summary judgment in Hernandez's favor on this issue.

V.    Hernandez's MSJ on the Joint Employer Issue

Hernandez also seeks summary judgment in his favor on the question of, if he was an employee of Defendant Trendy Collections, LLC and not an independent contractor, whether he was an employee of Defendants Indertjit S. Dhani, Rajinder Singh, and Reetu Kaur as well as Trendy – that is, whether Defendants Indertjit S. Dhani, Rajinder Singh, and Reetu Kaur may also be liable, as Hernandez's employer, for any unpaid compensation under the FLSA.

"To be bound by the requirements of the Fair Labor Standards Act, one must be an 'employer.'" *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984) (citing 29 U.S.C. §§ 206-207). The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 209(d).

This question, too, must be answered in light of the economic realities of the entire relationship between the parties based on the evidence. *See Gray v. Powers*, 673 F.3d 352, 354-55 (5th Cir. 2012). The United States Court of Appeals for the Fifth Circuit has explained that the "remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional

common law applications." *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989). Accordingly, the Fifth Circuit has approved use of the "economic realities" test to determine who is an employer under the FLSA. *See Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010).

A corporate officer with operational control of a corporation's employees is an employer along with the corporation, jointly and severally liable under the Fair Labor Standards Act for unpaid wages. *See Gray*, 673 F.3d at 354-55; *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984). That is, those who have operational control over employees within a company may be individually liable for the Fair Labor Standards Act violations committed by the company. *See Gray*, 673 F.3d at 355.

To determine whether an individual or entity is an "employer," a court considers whether the alleged employer: "'(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Williams*, 595 F.3d at 620). "'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)); *see also Gray*, 673 F.3d at 357 ("The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies.").

-33-

That is, an individual defendant's operational control over employees within Trendy Collections, LLC can be shown through evidence that he had the power to hire and fire employees, that he had the ability to supervise and control employees' work schedules or employment conditions, that he had the power to set wages and payment methods, and that he maintained the company's employment records. *See Gray*, 673 F.3d at 357 ("An individual's operational control can be shown through his power to hire and fire, ability to supervise, power to set wages, and maintenance of employment records."). Each element need not be present for the jury to determine that an individual defendant had operational control over employees within the company, but a jury could not properly find that an individual defendant was Hernandez's employer under the FLSA if Hernandez proved none of the elements as to that individual defendant in this case because, "[w]hile each element need not be present in every case, finding employer status when none of the factors is present would make the test meaningless." *Id.*

The Fifth Circuit has "decline[d] to adopt a rule that would potentially impose individual liability on all shareholders, members, and officers of entities that are employers under the FLSA based on their position rather than the economic reality of their involvement in the company." *Id.* The ultimate question, as to whether an individual defendant was Hernandez's employer for the FLSA's purposes, is whether, considering the economic reality of the individual defendant's involvement in Trendy Collections, LLC, the individual defendant had operational control over employees within Trendy Collections, LLC. *See Martin v. Spring Break '83 Productions, L.L.C.,*

688 F.3d 247, 251-53 (5th Cir. 2012).

Hernandez contends that he is entitled to partial summary judgment because there is no genuine issue of material fact, after applying the economic reality test to the evidence in this case, that Defendants Indertjit S. Dhani, Rajinder Singh, and Reetu Kaur are Hernandez's employers for FLSA purposes. *See* Dkt. No. 47 at 12-17. Hernandez "has the burden of establishing employer status for purposes of his FLSA claim," and, because he "will bear the burden at trial of proving that [Defendants Indertjit S. Dhani, Rajinder Singh, and Reetu Kaur] were his employers for purposes of his FLSA claim, to be entitled to summary judgment on this issue he must establish [Defendants Indertjit S. Dhani's Rajinder Singh's, and Reetu Kaur's] employer status 'beyond peradventure.'" *Leal v. Magic Auto Touch Up, Inc.*, No. 3:16-cv-662-D, 2018 WL 297339, at *9 (N.D. Tex. Jan. 4, 2018).

A.    Defendants Indertjit S. Dhani and Rajinder Singh

Dhani's and Singh's own deposition testimony cited by Hernandez precludes any conclusion that a reasonable jury could determine that, considering the economic reality of each defendant's involvement in Trendy, each of these defendants was not a joint employer with Trendy as an owner and manager with operational control over Trendy's workers.

And, as noted above, the undisputed facts for summary judgment purposes show that:

·    Dhani is the owner and president of Trendy, had the authority to hire, fire and supervise workers at Trendy, including authority to terminate employees on

behalf of Trendy during the period that Hernandez worked for Trendy, is responsible for setting policies of Trendy, has signature authority to write checks on behalf of Trendy, paid individuals who performed labor on behalf of Defendant Trendy,

· Singh had supervising authority and conferred with Dhani on hiring decisions for Trendy, was personally responsible for setting the Plaintiff's schedule at least on days when Trendy needed Hernandez to work and he was available, paid individuals who performed labor on behalf of Defendant Trendy; and

· Dhani and Singh each traveled to trade shows with workers including Hernandez.

In response to Hernandez's MSJ, Defendants assert only that "[t]here is no evidence that Defendant Dhani maintained employment records for Defendant Trendy" and that "[t]here is no evidence that Defendant Singh maintained employment records for Defendant Trendy." Dkt. No. 56 at 11. Hernandez correctly replies that "[i]t is not necessary to establish each element of the economic reality test in every case." Dkt. No. 59 at 7-8.

Looking at the summary judgment evidence, a directed verdict under Federal Rule of Civil Procedure 50(a) would be appropriate in Hernandez's favor on the question of whether Defendants Indertjit S. Dhani and Rajinder Singh would be liable, as Hernandez's joint employers, for any unpaid compensation under the FLSA. Because there is no genuine dispute of material fact on that issue, the Court determines that Hernandez is entitled to summary judgment in his favor on this issue.

B.    Defendant Reetu Kaur

But the summary judgment evidence that Hernandez cites as to Kaur does not meet his heavy burden to show beyond peradventure that no reasonable jury could determine that she was not a joint employer with Trendy – that is, that, considering the economic reality of her involvement in Trendy in keeping employment records and having signature authority on Trendy's checks and at least some authority to set workers' schedules and to make payments to those working for Trendy, she had operational control over employees of Trendy Collections, LLC.

The Court concludes that the summary judgment evidence here at least presents a genuine dispute of material fact as to whether Kaur is a joint employer under the FLSA and therefore precludes summary judgment in Hernandez's favor on this issue.

## Conclusion

For the reasons and to the extent explained above, the Court DENIES Defendants' Motion for Summary Judgment [Dkt. No. 43] and GRANTS in part and DENIES in part Plaintiff Gilberto Hernandez's Motion for Partial Summary Judgment [Dkt. No. 46].

SO ORDERED.

DATED: August 29, 2018

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE